685 A.2d 788

Robert W. TIPPERY

v.

MONTGOMERY COUNTY POLICE DEPARTMENT et al.

No. 2038, Sept. Term, 1995.

Court of Special Appeals of Maryland.

Nov. 29, 1996.

William W. Thompson, II (Zwerdling, Paul, Leibig, Kahn, Thompson & Wolly, P.C., on the brief), Washington, DC, for Appellant.

Bruce P. Sherman, Senior Assistant County Attorney (Charles W. Thompson, Jr., County Attorney, on the brief), Rockville, for Appellees.

Argued before WENNER, CATHELL and EYLER, JJ.

CATHELL, Judge.

Robert W. Tippery appeals from a judgment of the Circuit Court for Montgomery County (Miller, J., presiding) that affirmed a decision of an administrative hearing board (the Board) sitting pursuant to the Law Enforcement Officers' Bill of Rights (LEOBR). Md.Code (1957, 1992 Repl.Vol., 1995 Supp.), Art. 27, § 727 *et seq.* The Board found appellant "guilty" of an improper use of force and of making an untruthful statement in contravention of various rules of the Montgomery County Police Department. The Board recommended that he be terminated, and the Montgomery County Police chief accepted the recommendation and terminated appellant's employment with the Department. Appellant appealed to the circuit court. That court affirmed the Board's and the police chief's determination and action. Appellant presents three issues which we reorder:

1. Whether the findings of fact of the hearing board are not supported by substantial evidence, and are inadequately explained[.]

2. Whether the penalty of discharge is arbitrary or unreasonable[.]

We restate appellant's remaining question:

3. Did the Board's admission of the complainant's statement constitute a violation of due process where the complainant did not testify?

## The Facts

We cull our factual narration from the Statement of Facts in appellant's brief. We include here primarily those portions of testimony and evidence supporting the Board's and the trial court's decisions, despite the presence of contrary or contradictory evidence. *See Terranova v. Board of Trustees of Fire & Police Employees Retirement Sys.*, 81 Md.App. 1, 9, 566 A.2d 497 (1989), *cert. denied*, 319 Md. 484, 573 A.2d 808 (1990).

At the time of the incident, appellant was a tenured police officer.

On August 18, 1994, private security guard David Litz was working at the Manor Apartments on Georgia Avenue. During the late afternoon, Litz observed that a juvenile named Roger Johnson "and a couple of his friends were hanging out in the park area, which management had declared ... off limits to non-residents...."

Litz asked the group to leave. They refused. Consequently Litz "requested the County Police to come out and help me remove them from the property...." Johnson and another young man sat down on the parking lot curb, and refused to leave. Litz felt threatened because he "knew a couple of them had been arrested before for assaults and burglaries and stuff like that...."

The first police officer to arrive was Officer Tippery [appellant]. Litz "explained to Officer Tippery what was going on, and that's when we approached the two individuals. They were sitting on the curb." By this time, the two young men's "voices were raised. They were agitated...."

As Litz recalled, as Tippery and he approached Johnson and the other youth, "[n]either one of us had said anything to him, and [Johnson said] ... yes, I'm the one with the big mouth or the loud mouth." Tippery then "asked the subject to stand up and asked for identification, and he said he didn't have any identification." Johnson then stood up.

As Tippery recalled,

. . . .

So, I said, 'Fine, if you're not going to talk to me, you're under arrest.' So, I told him to put his hands behind his back. So, he turned around, and as he's putting his hands behind his back, I grabbed one of his arms, and I was going to grab the other but he pulled it away from me and put the cigarette in his mouth.

So, I regained control of the arm. I placed the handcuffs on him. I told him to spit out the cigarette. He just stared blankly away from me and didn't respond to me. So, I flicked it out of his mouth, and I turned him, and Officer Litz and I walked him back to my cruiser which was about 10 feet away.

While Tippery was talking to Johnson at the curb, County Police Officers Swinford and Dasilva arrived. Dasilva observed the arrest of Johnson by Tippery as "[t]ypical technique, handcuff behind the back or hands behind the back."

As recalled by Litz, at this point Johnson "was kind of resistive. I believe he didn't want to be placed under arrest, but . . . he wasn't really disorderly until we got him to the car when he wouldn't . . . sit down in the car." Officers Prange and Mattare also arrived on the scene. They parked on the opposite side of the driveway from Tippery's cruiser.

When Tippery arrived at his car with Johnson, Tippery "put . . . [Johnson's] chest against the passenger door . . . , and . . . was holding him between the shoulder blades and on the base of his neck leaning him against the car."

. . . .

In a written brutality complaint, Johnson alleged that Tippery "through [sic] me on the door of the car." In his interview, Johnson claimed that Tippery "slammed me against the car and I wasn't resisting arrest or nothing. I was calm and he slammed me against the car. . . ."

. . . .

According to Officer Cindy Prange, as Tippery was putting Johnson into the cruiser, Prange was "standing right

next to the car door." ... Mattare, who was Prange's trainee, asserted that at this point Prange was standing:

To the rear of the vehicle.

Q.... Did you ever see her come up to the passenger door of the vehicle within an arm's length of Officer Tippery[ ]?

A. Not that I remember.

Nevertheless, Prange testified that she saw Tippery strike Johnson in the face several times:

Q.... So, the only motion you see then is what? Do you see any motion? Can you tell us today if he used his left hand or right hand?

A. No, I can't....

Q. Okay, but you're absolutely certain that the contact occurred to the right side of this young man, the side facing [O]fficer Tippery; is that fair to say?

A. Correct, yes.

Before the Grand Jury, Prange claimed "I saw it very clear;" and "the defendant actually sat there, and Officer Tippery hit him...." Prange also initially asserted that she saw Tippery "hitting him with his fist." But, under further questioning, Prange conceded that: she couldn't tell which hand Tippery was using; she didn't know if his hand was open or in a fist, and responded "I don't recall, I don't recall, I don't recall," when asked what the "swinging" motion she interpreted to be hitting actually looked like. Nevertheless, Prange also insists ... that when she observed the striking she was "standing right behind Officer Tippery's I guess left side."

The "ultimate" question of Prange at the hearing board was as follows: "Q: So, the only motion you see then is what? Do you see any motion? Can you tell us today if he used his left hand or his right hand? A. No, I can't." Ironically, the only consistent and steadfast descriptive testimony by Prange is that the blows struck the right side of Johnson's face.

### 1.

**Whether the findings of fact of the hearing board are not supported by substantial evidence, and are inadequately explained[.]**

### A.

**Does the evidence support the Board's findings?**

In respect to the review of administrative agency decisions, we have said that "[t]here is a distinction between evidence which compels a certain result and that which merely permits it." *Jabine v. Priola,* 45 Md.App. 218, 234, 412 A.2d 1277 (1980). If the evidence permits a result, rather than compels it, it is fairly debatable. Judge Moylan defined "fairly debatable" for us in *B.P. Oil, Inc. v. County Bd. of Appeals,* 42 Md.App. 576, 579–80, 401 A.2d 1054 (1979):

> Where B.P. seeks, as here, to say that the Board was compelled, as a matter of law, to rule in its favor, B.P. assumes not merely the lesser burden of generating a fairly debatable issue so as to permit a ruling in its favor but the significantly greater burden of actually dispelling fair debate by proof so clear and decisive as legally to compel a ruling in its favor. In this case, B.P.'s own evidence, though adequate, was equivocal. Its own market survey showed some public support for its proposed facility but no strong or unambiguous cry for such services. The evidence as to what was the appropriate neighborhood was also ambiguous at best—one version arguably showing need; the other, significantly dispelling it. The need was, in short, fairly debatable.

> There is frequently such a middle ground wherein it is neither arbitrary, capricious or illegal to say, "Yes," nor arbitrary, capricious or illegal to say, "No." The decision here was in that discretionary range of the Board and was not compelled either way as a matter of law.

Judge Hammond wrote for the Court of Appeals, in *State Ins. Comm'r v. National Bureau of Casualty Underwriters,* 248 Md. 292, 309, 236 A.2d 282 (1967), that, "under ... [either] of

the standards[,] the judicial review essentially should be limited to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *See also People's Counsel v. Mangione*, 85 Md.App. 738, 744, 584 A.2d 1318 (1991); *Terranova, supra*, 81 Md.App. at 8–9, 566 A.2d 497.

 Stated otherwise, the standard is "whether reasoning minds could reasonably reach that conclusion from facts in the record before the agency, by direct proof, or by permissible inference. If the conclusion could be so reached, then it is based upon substantial evidence, and the court has no power to reject that conclusion." *Toland v. State Bd. of Educ.*, 35 Md.App. 389, 396, 371 A.2d 161 (1977) (quoting *Commissioner, Baltimore City Police Dep't v. Cason*, 34 Md.App. 487, 508, 368 A.2d 1067, *cert. denied*, 280 Md. 728 (1977)); *see also Snowden v. Mayor of Baltimore*, 224 Md. 443, 447–48, 168 A.2d 390 (1961) ("The substantial evidence test 'means that the reviewing court's inquiry is whether on the record the agency could reasonably make the finding.' . . . Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " (citations omitted)). In addition, "if the evidence makes the issue of harm fairly debatable, the matter is one for the Board's decision, and should not be second-guessed by an appellate court." *Board of County Comm'rs v. Holbrook*, 314 Md. 210, 218, 550 A.2d 664 (1988).

 In *Snowden*, 224 Md. at 448, 168 A.2d 390, the Court of Appeals said:

> The heart of the fact finding process often is the drawing of inferences from the facts. The administrative agency is the one to whom is committed the drawing of whatever inferences reasonably are to be drawn from the factual evidence. "The Court may not substitute its judgment on the question whether the inference drawn is the right one or whether a different inference would be better supported. The test is reasonableness, not rightness." [Citation omitted.]

Therefore, we must give due deference to the right of an administrative agency, such as the Board, to draw reasonable inferences from the facts and circumstances presented before it. *Holbrook,* 314 Md. at 218, 550 A.2d 664; *see also Ramsay, Scarlett & Co. v. Comptroller of Treasury,* 302 Md. 825, 490 A.2d 1296 (1985); *Comptroller of Treasury v. World Book Childcraft Int'l, Inc.,* 67 Md.App. 424, 508 A.2d 148, *cert. denied,* 307 Md. 260, 513 A.2d 314 (1986).

In *Terranova,* we noted:

> We said about conflicting witness testimony in *Commissioner[, Baltimore City Police Dep't] v. Cason,* 34 Md.App. 487, 509, 368 A.2d 1067[, *cert. denied,* 280 Md. 728] (1977), that "... [t]o believe Sgt. Cason was to disbelieve Roye and Spangler. The issue was credibility, and nothing more. Direct evidence of an ultimate fact may be true, or it may be untrue, but it surely cannot be called insubstantial."
>
> In the case at bar the appellant's expert said that he was not fit. The police department's doctors, who partially based their opinions upon the opinion of appellant's physician, said he was not fit. Dr. Potash said, in essence, that appellant was misrepresenting his condition and/or malingering, and for that reason, and other reasons stated, [he] was fit for police employment. The fact that the opinions of three doctors go one way and the opinion of a fourth doctor another does not make the report of that fourth insubstantial, especially when, as here, credibility of the respective physicians has played an important role in the Panel's decision. *Had the examiner found conversely, that finding also might have been supported by substantial evidence.*

81 Md.App. at 11–12, 566 A.2d 497 (emphasis added). We summed up our decision by stating:

> While, were we the finder of fact we might well have found to the contrary, there was substantial evidence supporting the examiner's determinations. The weighing of the evidence and the assessment of witness credibility is for the finder of fact, not the reviewing court. A reasoning mind could have reached the decision of the agency and could

reasonably have done so. Thus, the trial court did not err in rejecting the appellant's insubstantial evidence arguments. *Robinson v. Montgomery County*, 66 Md.App. 234, 503 A.2d 275, [*cert. denied*, 306 Md. 119, 507 A.2d 631] (1986).

81 Md.App. at 13, 566 A.2d 497.

■ The testimony of Officer Prange, alone, was sufficient to sustain the findings of the Board. She testified that she saw appellant strike the victim in the face. She stated, at one point, that she "believed" he was struck on the right side of his face. At another point, she stated that she saw appellant use his left hand, and on another occasion she testified that she did not recall which hand was used. These types of testimonial conflicts are not rare—in fact, skillful attorneys attempt to create just such inconsistencies in order to attack the credibility of a witness or witnesses. The credibility of witnesses, however, is for the finder of fact, in this case the Board and not for this Court.

From this left hand/right hand, which hand/any hand asserted dispute, an inference can be made, to the extent one is necessary—and we do not believe it was—that there is evidence [1] that the victim was struck in the face by appellant.

Appellant also strains to argue that the Board had insufficient evidence that appellant used his "fist" to strike the victim and that the Board had to make that finding in order to find him guilty, because the term "fist" was used in the specification. While we do not believe that the Board must respond with that degree of specificity or that it would have to find that a closed fist was used in order to render a guilty determination, we note that two inferences may be made when a person strikes another with his hand, *i.e.*, it was either open or closed into a fist. The Board would have, and apparently did, infer that appellant's hand was closed.

There was sufficient evidence to sustain the Board's findings that appellant struck the victim.

------

1. We note appellant contradicts almost everything.

## B.

### Were these findings adequately explained?

Appellant here argues that, because the charges stated that the victim was struck on the left side of his face, the Board had to make specific findings that the point of impact was the victim's left cheek. Appellant also argues, in respect to the charge involving lying, that the Board could not find that he lied unless the Board found that he had struck the victim in both "the face and chest area." [2]

He argues that because a dictionary defines the word "punch" to include the use of a "fist," that in order to determine that appellant was guilty of the charge of lying, the Board also would have to have found specifically that a fist was used, as opposed, we suppose, to an open hand or some other type of blow. Appellant argues that "[i]n this case, findings concerning the 'left cheek' and the 'fist' are both *sine qua non* conditions for a finding of guilt."

Appellant's entire argument as to the charge of lying is fatally defective. Appellant was asked, "[D]id you punch him [Johnson] three or four times in the face and chest area?" His complete response was, "No, I did not, I did not deliver blows to Mr. Johnson." Thus, his answer, the answer forming the basis of the charge of lying, was that he did not hit the alleged victim at all. In the context of the question and the answer, whether appellant struck Johnson with an open hand or closed fist, or on the left cheek or right cheek, is, as to the charge of lying, not relevant, even if extreme specificity is required. However, even if his answer had merely been, "No," he still would not prevail. We explain.

Appellant cites *Tron v. Prince George's County,* 69 Md.App. 256, 517 A.2d 113 (1986), as support for his argument that the Board was required to make specific findings that the victim had been struck by appellant with his fist in both the face and chest areas in order to find that he had lied. In *Tron,* it was

---

**2.** We have heretofore briefly addressed appellant's assertion that there was no evidence that appellant used his fist.

argued that the agency there involved was required to make findings of fact. We agreed. We still agree. The issue in the case *sub judice,* however, is how specific must those findings be. The agency's decision in *Tron* read, *in toto:*

Disability Review Board Case # 137

Henry Tron—Firefighter

Administrative Session—June 29, 1983

At the request of the Fire Department[,] the Medical Advisory Board reviewed the medical reports on Firefighter Tron to determine his fitness for duty. The Board reviewed the medical reports pertaining to his "arthritic condition" from the County Consultant and his treating physician. On the basis of the data submitted the Board recommends disability retirement as a result of the arthritis which is unrelated to his occupation as a Firefighter. (See attached Findings of Facts for details).

The Disability Review Board considered the Findings of Fact and the medical reports and determined that Firefighter Tron is disabled within the meaning of the Fire Service Pension Plan and that his disability is non-service connected due to 'severe arthritis'.

---

Date

---

William R. Brown, Jr., Chairman

---

Mary Godfrey, Personnel Officer

---

Lt. Col. Thomas Davis, Police Dept.

*Id.* at 270, 517 A.2d 113.

In that case, we noted that the agency erroneously believed that a review board's written opinion could also serve as the agency's findings of fact. We held that the law in question required the agency to make such findings. Quoting *73A C.J.S.,* Public Administrative Law and Procedure § 143 (1983), we noted, in part, that the purpose of the agency's findings is

to facilitate judicial review and that those findings "are needed to aid a court" in determining the sufficiency question and in considering whether the agency's actions are proper. *Tron,* 69 Md.App. at 271, 517 A.2d 113. We also noted that the findings were necessary so that courts could be assured that the agency had been acting "in accordance with the law." *Id.* We concluded, in *Tron,* that the agency

> gave no reasons for concluding that appellant's physical condition "is unrelated to his occupation. . . ." The Board's findings cannot be sustained without adequate reasons in the record. . . . The Board is required to give reasons for its decisions. [Citation omitted.]

*Id.* at 271–72, 517 A.2d 113. We, thus, must examine whether the Board gave reasons, whether there was sufficient evidence or evidentiary inferences to support the agency's reasons, and whether the reasons were sufficient to support its ultimate determinations.

We begin our resolution of this issue with the Board's decision:

> MR. CHAIRMAN: The time is now 1601 hours. The Board has reconvened in the matter of Police Officer II Robert W. Tippery. After deliberations by all members of the hearing Board, it is a unanimous decision of this Board that Police Officer II Robert W. Tippery is Guilty of the allegations alleged in Charges Number 1, use of force, Allegation Number 2, courtesy, and Allegation Number 4, untruthful statements. It is the unanimous decision of this Board that Police Officer II Robert W. Tippery is Not Guilty of the allegation alleged in Charge Number 3, untruthful statements. At this time the Board has convened for the purposes of receiving any evidence on the Officer's past job performance, other relevant information in proceeding any further with our decision.

After the decision, during the hearing relative to the recommendations for disciplinary action, appellant's counsel requested that the Board "please document all of your reasons" when it made its recommendation to the chief. He further request-

ed that the Board "make your reasons known and your findings of fact and your conclusions." The attorney for appellee agreed, as to the need for the Board to make findings when it made its recommendation. That recommendation, when made, included the following under the heading of Hearing Board Findings: "The Board, in unanimous opinion, found Officer Tippery *Guilty* on charges # 1, # 2 and # 4." It then discussed the testimony of various witnesses:

The third witness, David Litz, was the Amguard Security officer who requested the police assistance. Mr. Litz testified that he held Johnson against the police vehicle while Officer Tippery cleaned out the seat of the police vehicle. He further testified that he observed nothing unusual; however, Officer Tippery asked him to "turn around and look behind you" when Officer Tippery was putting Johnson in the police vehicle. Mr. Litz turned around and observed nothing, did not think anything of it and turned back to see Johnson in the seat with Officer Tippery.

. . . .

Officer Cynthia Prange was the next witness who stated that she observed Officer Tippery hitting Johnson in the face, maybe three [or] four times, while handcuffed and seated in the police vehicle. Officer Prange stated that Johnson was bent over in the seat, possibly as a result of the blows or attempting to defend himself from the blows. Officer Prange could not state if Officer Tippery was hitting Johnson with an open hand or fist. Officer Prange further stated that she believed that Officer Tippery was hitting Johnson on the right side of his face. She demonstrated the actions as a short, fast, back and forth motion with the arm and hand.

Officer Lisa Mattare followed Officer Prange. She testified that Officer Tippery stated something reference to look over there or turn your head as Officer Tippery was struggling with Johnson. She also turned around and observed nothing. Officer Mattare then turned around and observed what she believed was Officer Tippery pushing Johnson's shoulders back into the seat. Officer Mattare was standing

to the rear of the police vehicle approximately ten (10) feet from Officer Tippery.

. . . .

Officer Tippery was the final witness. He testified that he never struck Johnson. He was only holding his face sideways to avoid Johnson expectorating on him. Further, he told Litz to turn around and look at a dent Johnson had put on his door after he was secured.

The Board then addressed its deliberations and furnished its assessment of the credibility of the witnesses by concluding that the testimony of Officer Prange was credible and the testimony of appellant was not.

During deliberations, the Board members discussed the testimony of the witnesses and, based on the evidence, unanimously found Officer Tippery guilty of three (3) of the four (4) charges.

Officer Prange, a senior officer participating in the Field Training Program, stated that she observed Officer Tippery strike Johnson three (3) or four (4) times.

Officer Mattare was with Officer Prange. She heard Officer Tippery tell Mr. Litz to turn around and look; she also turned and observed nothing. Mr. Litz was standing to the rear of the police vehicle and Officer Mattare was standing to the side. If Officer Tippery wanted Mr. Litz to observe vehicle damage to the door, he would have looked down and toward the front not to turn around.

Officer Tippery's statements and actions were not compatible with the message he was allegedly indicating regarding the damage to the vehicle door.

The Court of Appeals in *Younkers v. Prince George's County,* 333 Md. 14, 633 A.2d 861 (1993), *reversing in part Prince George's County v. Younkers,* 94 Md.App. 48, 615 A.2d 1197 (1992), reiterated the standard of review applicable in the case at bar:

The LEOBR provides for an appeal to the circuit court and thereafter to the Court of Special Appeals, Art. 27, § 731(d)(3) and § 732, but does not specify the scope of

judicial review. When a state police agency is involved, the state Administrative Procedure Act (APA) applies, and the scope of judicial review is spelled out by § 10–222(h)3 of that Act. See Maryland Code (1984, 1993 Repl.Vol., 1993 Cum.Supp.) §§ 10–201 through 10–226 of the State Government Article. The appeal in this case was not from an "agency" as defined by the APA, § 10–202(b), and thus the scope of judicial review in this case is that generally applicable to administrative appeals.

333 Md. at 17, 633 A.2d 861. Quoting from *State Ins. Comm'r, supra,* 248 Md. at 309–10, 236 A.2d 282, the *Younkers* Court stated, in pertinent part:

Whichever of the recognized tests the court uses—substantiality of the evidence on the record as a whole, clearly erroneous, fairly debatable or against the weight or preponderance of the evidence on the entire record—its appraisal or evaluation must be of the agency's fact-finding results and not an independent original estimate of or decision on the evidence. The required process is difficult to precisely articulate but it is plain that it requires restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions under any of the tests, all of which are similar. There are differences but they are slight and under any of the standards the judicial review essentially should be limited to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. This need not and must not be either judicial fact-finding or a substitution of judicial judgment for agency judgment.

333 Md. at 18, 633 A.2d 861. Then, referring to *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 512–13, 390 A.2d 1119 (1978), the *Younkers* Court quoted:

"Substantial evidence," as the test for reviewing factual findings of administrative agencies, has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Snowden v. Mayor [of Baltimore],* 224 Md. 443, 448 [168 A.2d 390] (1961). The scope of review "is limited 'to whether a

reasoning mind reasonably could have reached the factual conclusion the agency reached,' " [citing cases within and without the State, treatises, and law journals].

In applying the substantial evidence test, we have emphasized that a "court should [not] substitute its judgment for the *expertise* of those persons who constitute the administrative agency from which the appeal is taken." *Bernstein v. Real Estate Comm.*, 221 Md. 221, 230 [156 A.2d 657] (1959), *appeal dismissed,* 363 U.S. 419, 80 S.Ct. 1257 [4 L.Ed.2d 1515] (1960). We also must review the agency's decision in the light most favorable to the agency, since "decisions of administrative agencies are prima facie correct," *Hoyt v. Police Comm'r,* 279 Md. 74, 88–89 [367 A.2d 924] (1977), and "carry with them the presumption of validity," *Dickinson–Tidewater, Inc. v. Supervisor [of Assessments],* 273 Md. [245,] 256, 329 A.2d 18 [(1974)]; *Heaps v. Cobb,* 185 Md. 372, 378 [45 A.2d 73] (1945). Furthermore, not only is it the province of the agency to resolve conflicting evidence, but where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inferences.

*Id.* 283 Md. at 512–13 [390 A.2d 1119] (alteration in original) (some citations omitted). More recently, the Court of Appeals said:

[T]he order of an administrative agency must be upheld on judicial review if it is not based on an error of law, and if the agency's conclusions reasonably may be based upon the facts proven. *Ad + Soil, Inc. v. County Commr's,* 307 Md. 307, 338–39 [513 A.2d 893] (1986). But a reviewing court is under no constraints in reversing an administrative decision which is premised solely upon an erroneous conclusion of law. *See, e.g., Ramsay, Scarlett & Co. v. Comptroller [of Treasury],* 302 Md. 825, 835 [490 A.2d 1296] (1985); *Harford County v. McDonough,* 74 Md.App. 119, 122 [536 A.2d 724] (1988).

333 Md. at 18–19, 633 A.2d 861.

In *Younkers,* the officer there contended that the evidence was insufficient to support the Board's finding and disciplinary

recommendation "because there was no proof that anyone else ... heard enough of his conversation." *Id.* at 23, 633 A.2d 861. The Court disagreed, saying:

The statement, when made in the presence of other and subordinate officers, was inappropriate and censurable. That none of the officers present testified to understanding the context of the statement is not a decisive fact; the statement was made in the immediate presence of those who could have been expected to hear and understand it, and the hearing board could well have concluded that the statement should not have been made at that time and under those circumstances.

As the County concedes, had Sergeant Younkers taken Lieutenant Evans aside and expressed his personal displeasure in the same words, there would have been no basis for disciplinary action. The making of this statement, however, in the immediate presence of the subordinate officer he was questioning, and others, was improper. An organization such as the Prince George's County Police Department has a legitimate interest in maintaining strict discipline within its ranks.

*Id.; see also Montgomery County v. Stevens,* 337 Md. 471, 654 A.2d 877 (1995).

█ In the case *sub judice,* the Board rendered findings and gave its reasons for those findings. It did not believe appellant. Officer Prange testified that appellant struck the victim. The issue of what hand struck what side of the victim's face, whether open or a fist, are evidentiary conflicts that affect matters of credibility. Those matters were resolved against appellant by the appropriate finders of fact—the Board. The search by officers for reversals of the findings of such boards because of some "supposed" lack of specificity in findings does not require boards to chronicle every turn of a neck or wince of an eye. Appellant elevates the picking of nits to a new level. The findings were sufficiently given, the reasons sufficiently stated, and both were supported by substantial evidence.

## 2.

**Whether the penalty of discharge is arbitrary or unreasonable[.]**

Appellant was discharged as a result of the Board's recommendation. In addition to the facts of the instant case, appellant's personnel file was presented in evidence before the Board. Appellant "asked the Office of Internal Affairs to produce Officer Tippery's personnel file" and this request was granted. Appellant argued that the file contained no "sustained allegation" of excessive force against him. Appellee's attorney then stated the County's position that "[t]his is an unauthorized use of force that there is no explainable justification for hitting a handcuffed prisoner."

In rendering its recommendation for termination, the Board considered certain information it considered relevant from appellant's personnel file:

What concerned the Board members was *comments* in previous evaluations. *These comments indicated that there was a pattern of excessive force and he was counselled by supervisors and managers on separate occasions.*

On May 8, 1994, Sergeant S. Michael Mancuso stated in his Reviewers Comments Section that during the previous year, "POII Tippery was involved in several incidents which required the Use of Force report to be completed. As a result, I was asked to review these reports. I found that in every instance, POII Tippery was justified in his actions; *however, I took this occasion to review the use of force directive with him.*"

On November 29, 1994, Captain Clarke stated in his District Commander's Comments section, "It is apparent that Officer Tippery is an aggressive officer when it comes to making arrests and enforcing traffic laws. This in itself is not negative as long as it is accomplished in a professional manner. *My concern is that Officer Tippery does not always act in a professional manner consistent with departmental expectations in exercising the proper amount of force in arrest situations.* Officer Tippery is currently

without police powers pending the investigation of two use of force complaints. He has been in an alternative duty assignment since August 30, 1994.

*"During this rating period, I personally counseled Officer Tippery as to what my expectations were regarding appropriate use of force and the consequences of inappropriate use of force.* Officer Tippery, during the previous rating period, was removed of police powers for a 5½ month period while an internal departmental investigation was completed. His police powers were reinstated on October 21, 1993. After being cleared of any wrongdoing."

The Board members determined that there appeared to be a pattern of excessive use of force *and that he was counselled.*

The members of the Hearing Board unanimously recommend the following:

*Allegation # 1—Termination*

*Allegation # 2—Suspension three (3) days without pay*

*Allegation # 4—Termination*

[Some emphasis added.]

It is clear that the Board gave its reasons for its recommendation, *i.e.*, the circumstances of the instant offense and the pattern of abuse allegations that gave rise to his departmental supervisor's past concerns as to abuse of force by appellant.[3] Those allegations resulted in at least two instances in which appellant, during investigations, lost his police powers and was assigned administrative duties. Thus, it is clear by reason of the previous matters that appellant, whether cleared of the prior allegations or not, was fully aware, or should have been, of the importance of using only appropriate force. The matter of abuse of force was not a new issue for appellant. The record clearly indicates it was an issue with which he was fully familiar.

---

**3.** Appellant cites *Mayor of Ocean City v. Johnson,* 57 Md.App. 502, 470 A.2d 1308 (1984). It is inapposite.

■ We hasten to add, however, that, in our view, the prior history was not necessary to sustain the recommendations. The incident itself was enough. With the possible exception of corruption, no malfeasance can, in a free society, so cripple and destroy the effectiveness of a police agency as the abuse of force. The excessive use of force, given the position of authority conferred upon police officers, is an agency's cancer. It can spread throughout a department infecting other officers and, like a cancer, it can, and if unchecked, will, effectively terminate the validity of its host as an effective and respected police agency. When discovered, it must be excised. Good officers recognize this. Officer Prange is such an officer. The members of the Board are good officers. We see no reversible error in the trial court's affirmance of the chief's acceptance of the recommendations nor in the Board's making of them.

### 3.

**Did the Board's admission of the complainant's statement constitute a violation of due process where the complainant did not testify?**

We first note that appellant did not subpoena Johnson. Johnson's name was, of course, on the list of witnesses supplied by the Board. Johnson had indeed been summonsed. He failed to appear. Thereafter, the Police Department proffered Johnson's complaint in the record. It was admitted subject to "further motions ... regarding the content should Mr. Sherman not produce the provider of the information." Later, the Department offered a tape recording of Johnson's statement. Over appellant's objection, it was admitted. Appellant challenges the introduction of the complaint and transcript because it denied him effective cross-examination of Johnson.

We noted in *Meyers v. Montgomery County Police Dept.,* 96 Md.App. 668, 626 A.2d 1010 (1993):

We agree with Officer Meyers that the LEOBR proceedings have some indicia of a criminal trial. Nevertheless, we

must not lose sight of the fact that they are, in reality, administrative proceedings conducted by laypersons. *See Widomski v. Chief of Police,* 41 Md.App. 361, 380 [397 A.2d 222], *cert. denied,* 284 Md. 750 (1979). This Court has stated, "Nothing in section 730 requires, or suggests for that matter, that it is the equivalent of a criminal proceeding" *Id.* 41 Md.App. at 379 [397 A.2d 222]. In *Widomski,* this Court refused to require a hearing board constituted under the LEOBR to "adhere strictly to the rules of criminal procedure." *Id.* at 380 [397 A.2d 222]. Nor do we believe that a finding of "guilty" or "not guilty" or the imposition of "punishment" transforms the LEOBR proceedings into a criminal or quasi-criminal trial. The LEOBR proceedings are disciplinary in nature and this results in the labels placed on the findings of a hearing board.

Furthermore, although the LEOBR sets forth certain evidentiary guidelines, "administrative agencies are not generally bound by the technical common-law rules of evidence...." *Montgomery County v. National Capital Realty Corp.,* 267 Md. 364, 376 [297 A.2d 675] (1972). Administrative agencies must simply "observe the basic rules of fairness as to parties appearing before them. Thus, even hearsay evidence may be admitted in contested administrative proceedings." *Id. See, e.g., Maryland Dep't of Human Resources v. Bo Peep Day Nursery,* 317 Md. 573, 595 [565 A.2d 1015] (1989) ("procedural due process does not prevent an agency from supporting its decision *wholly* by hearsay, if there is underlying reliability and probative value"), *cert. denied sub nom. Cassilly v. Maryland Dep't of Human Resources,* 494 U.S. 1067, 110 S.Ct. 1784 [108 L.Ed.2d 786] (1990).

96 Md.App. at 703–04, 626 A.2d 1010.

▮ While we do not perceive that it was error to admit the complaint, recording, and medical records, even if error, we do not perceive it to be prejudicial error. It is clear from the Board's decision, *i.e.,* its findings and recommendations, that it relied almost exclusively on Officer Prange's testimony and

the inherent implausibility of the reasons. appellant gave for telling the other officers to look away from him and the victim.

The Board in its finding noted that it "heard" testimony from ten witnesses. It then discussed the testimony it was considering in rendering its findings. Johnson's "testimony" was not listed among the ten witnesses named, nor were the recordings, the complaint, or any of Johnson's medical records mentioned by the Board in its written findings. We find no error; we perceive no prejudice.

Judge MILLER did not err in affirming the Board's decision.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**