909 A.2d 694

**MARYLAND–NATIONAL CAPITAL PARK
AND PLANNING COMMISSION**

v.

**Kathleen ANDERSON.**

**No. 112, Sept. Term, 2005.**

Court of Appeals of Maryland.

Oct. 19, 2006.

William C. Dickerson, Associate General Counsel (Adrian Robert Gardner, General Counsel, Maryland-National Capital Park and Planning Commission, on brief), Riverdale, for petitioner.

Michael Marshall (Schlachman, Belsky & Weiner, on brief), Baltimore, for respondent.

Argued before BELL, RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

GREENE, J.

This matter arises from the Maryland–National Capital Park Police Commission's ("Commission") petition for judicial review of an Administrative Hearing Board's ("Board") decision. The issue before this Court is whether a conflict exists between the Law Enforcement Officer's Bill of Rights

("LEOBR"), Md.Code (2003) § 3–101 et. seq. of the Public Safety Article, and the Administrative Procedure Act ("APA"), Md.Code (1984, 2004 Repl.Vol.), § 10–222 of the State Government Article, when an agency pursues an administrative complaint against one of its employees, and after an administrative hearing at which the tribunal enters a finding of "not guilty," the agency seeks judicial review of that decision. The Board, comprised of three police officers from the Commission's Prince George's County Park Police Department,[1] heard a case brought against fellow officer Kathleen Anderson, who was charged with violating the police department's vehicle pursuit policy. At the conclusion of the hearing, the Board entered a finding of "not guilty."

On July 25, 2003, the Commission petitioned the Circuit Court for Prince George's County for judicial review of the Board's decision. Officer Anderson filed a Motion to Dismiss, and the Circuit Court granted Officer Anderson's motion. On March 18, 2003, the Commission petitioned the Court of Special Appeals for judicial review. That court affirmed the judgment of the Circuit Court. *Maryland–Nat'l Capital Park & Planning Comm'n v. Anderson,* 164 Md.App. 540, 545, 884 A.2d 157, 160 (2005). The Commission then filed in this Court a petition for writ of certiorari,[2] which we granted. *Park and*

---

1. The Commission is a body corporate and an agency of the State. *See* Md.Code Ann. (1957, 2003 Repl.Vol.), Art. 28, § 1–101. The park police "have concurrent general police jurisdiction with the Montgomery and Prince George's County police within the parks and other areas ... under the jurisdiction of the Commission...." Art. 28, § 5–114(a). Md.Code (1984, 2004 Repl.Vol.) § 10–202(b) of the State Government Article defines "agency," for the purposes of judicial review of contested cases, as: "(1) an officer or unit of the State government authorized by law to adjudicate contested cases; or (2) a unit that: (i) is created by general law; (ii) operates in at least 2 counties; and (iii) is authorized by law to adjudicate contested cases." If an entity meets this definition, it is subject to the provisions of the "Contested Case" provisions of the APA.

2. The questions as presented by the Commission in its Petition for Writ of Certiorari are as follows:

I. Whether the Circuit Court and Court of Special Appeals Erred as a Matter of Law in Ruling that the Commission was not Entitled to

*Planning v. Anderson*, 390 Md. 500, 889 A.2d 418 (2006). For the reasons stated in this opinion, we affirm the judgment of the Court of Special Appeals.

## FACTUAL BACKGROUND

While on duty on September 8, 2001, Officer Kathleen Anderson conducted a registration check on a vehicle and found that the license plates had been reported stolen. She attempted to pull over the vehicle, but the driver refused to stop. The driver exceeded the 25 mile-per-hour speed limit, crossing back and forth across the center lines of the road. Officer Anderson followed the car, staying within a distance of one-to-two car lengths. During the pursuit, the occupants abandoned the vehicle and fled the area on foot. The vehicle continued moving until it crashed into a fence and a telephone pole, causing it to stop. Officer Anderson then stopped her vehicle. Officer Anderson stated that, while following the vehicle, she did not see any other vehicles on the road and that there was no other vehicle traffic or pedestrians present. Officer Anderson stated that she was still "one or two" car lengths behind the vehicle when it struck the telephone pole and that the entire incident lasted "between seven and [ten] minutes" and the length of "maybe two and a half" miles. She also stated that she did not ignore any traffic control devices in attempting to get the vehicle to stop, and estimated that her top speed was "between 35 and 40 [m.p.h.]," in contrast to the posted speed limit of "25 to 30 [m.p.h.]."

The Department conducted an investigation of Officer Anderson's September 8, 2001, activity and charged her with violating the provisions of the Department's vehicle pursuit

Judicial Review of the Final Decision of an Administrative Hearing Board Pursuant to Section 3–109 of the LEOBR.

II.   Whether the Circuit Court and Court of Special Appeals Erred as a Matter of Law in Ruling that Appellant Commission Was not Entitled to Judicial Review of the Final Decision of an Administrative Hearing Board Pursuant to Section 10–222 of the Administrative Procedures Act.

policy.[3]   As required by § 3–107 of the LEOBR,[4] an adminis-
trative board, comprised of park police officers, conducted a
hearing on March 13 and 14, 2003, concerning the charges
filed against Officer Anderson.   At the conclusion of the
hearing, the Board issued an oral finding of "not guilty."   On
June 30, 2003, the Board entered its written decision.

■   On July 25, 2003, the Commission petitioned the Cir-
cuit Court for Prince George's County for judicial review of
the Board's decision.   On November 3, 2003, Officer Anderson

---

3.   Bi–County Directive 414, which sets forth the Maryland–National
Capital Park Police Department's vehicle pursuit policy, was amended
on May 9, 2001 to the following:
   Fresh pursuit is only allowed when an officer has probable cause to
   believe that the fleeing suspect has committed or is attempting to
   commit the following:
   ● Any Felony involving the use of force or threat of physical force or
   violence against a person.
   ● A hit [and] run traffic accident resulting in death or serious injury[.]
   Any other pursuits are prohibited.

4.   Section 3–107, "Hearing by hearing board," provides in pertinent
part:
   (a) *Right to hearing.*—
   (1) Except as provided in paragraph (2) of this subsection and § 3–
   111 of this subtitle, if the investigation or interrogation of a law
   enforcement officer results in a recommendation of demotion, dis-
   missal, transfer, loss of pay, reassignment, or similar action that is
   considered punitive, the law enforcement officer is entitled to a
   hearing on the issues by a hearing board before the law enforcement
   agency takes that action.
   (2) A law enforcement officer who has been convicted of a felony is
   not entitled to a hearing under this section.
                     * * * *
   (c) *Membership of hearing board.*—
   (1) Except as provided in paragraph (4) of this subsection and in
   § 3–111 of this subtitle, the hearing board authorized under this
   section shall consist of at least three members who:
   (i) are appointed by the chief and chosen from law enforcement
   officers within that law enforcement agency, or from law enforce-
   ment officers of another law enforcement agency with the approval of
   the chief of the other agency;  and
   (ii) have had no part in the investigation or interrogation of the law
   enforcement officer.
   (2) At least one member of the hearing board shall be of the same
   rank as the law enforcement officer against whom the complaint is
   filed.

filed a Motion to Dismiss, asserting "[t]hat the Maryland National Capital Park and Planning Commission . . . is not a party to this case and therefore lacks standing to appeal," and "[i]n the alternative, that the Administrative Hearing Board entered a finding of not guilty which terminates this action and [the Commission] has no authority to appeal its own decision." In its response, the Commission asserted that it "was a party to the administrative action and therefore ha[d] standing to appeal to this Honorable Court," and "[t]hat the Administrative Hearing Board's finding of 'not guilty' terminated the action and constituted a final decision from which the Commission properly appealed to this Honorable Court."[5]

## STANDARD OF REVIEW

Judge Eldridge, writing for this Court in *Maryland Aviation Admin. v. Noland,* 386 Md. 556, 873 A.2d 1145 (2005), reiterated the standard of review for administrative agency decisions: "[a] court's role in reviewing an administrative agency adjudicatory decision is narrow . . . it 'is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.' " *United Parcel v. People's Counsel,* 336 Md. 569, 576–77, 650 A.2d 226, 230 (1994). *See also* Md.Code (1984, 1995 Repl.Vol.), § 10–222(h) of the State Government Article. This Court, and any other court reviewing administrative decisions, "shall apply the substantial evidence test to the final decisions of an administrative agency, but it must not itself make independent findings of fact or

---

5. It is important to note that a request for judicial review does not constitute an "appeal." We stated in *Gisriel v. Ocean City Board of Supervisors of Elections,* 345 Md. 477, 492, 693 A.2d 757, 764 (1997), that "[i]n a technical, constitutional meaning of the term, a circuit court *never* exercises 'appellate jurisdiction' when it directly reviews the decision of an administrative agency or a local government body." To elucidate further, "whenever a circuit court directly reviews the action, or inaction, of any administrative agency . . . the court is exercising original jurisdiction and not appellate jurisdiction." *Gisriel,* 345 Md. at 491, 693 A.2d at 764.

substitute its judgment for that of the agency." *Balt. Lutheran High Sch. Ass'n v. Employment Sec. Admin.*, 302 Md. 649, 662, 490 A.2d 701, 708 (1985). *See also Md. Comm'n on Human Relations v. B.G. & E.*, 296 Md. 46, 51, 459 A.2d 205, 209 (1983) (stating that "a party can resort to a court only when there is a final order in the administrative proceeding").

In the instant case, we must decide whether a Board's finding of "not guilty" entitles the Commission to seek judicial review of that decision under the LEOBR or the APA. In addition, we must examine both statutes to determine if the judicial review provisions of the APA conflict with the judicial review provisions of the LEOBR.[6] The resolution of these issues requires statutory interpretation. Interpretation of a statute is a question of law, and, therefore, we review the decision of the Circuit Court *de novo. Moore v. State*, 388 Md. 446, 452, 879 A.2d 1111, 1114 (2005); *see also Salamon v. Progressive Classic Ins. Co.*, 379 Md. 301, 307, 841 A.2d 858, 862 (2004).

## DISCUSSION

The parties dispute whether, under the LEOBR, the Commission may seek judicial review of the Board's finding of "not guilty." Section 3–108 of the LEOBR, entitled "Disposition of administrative action," states that "[a] finding of not guilty terminates the action." Officer Anderson asserts that this provision means that the agency may not seek judicial review of a finding of "not guilty." The Commission contends that the provision simply indicates the point at which the administrative action is final and therefore ripe for judicial review. The Commission also argues that an agency is authorized by the APA to seek judicial review, but Officer Anderson maintains that the LEOBR supersedes the APA, and therefore does not allow review under the circumstances.

---

6. Section 3–102(a) of the LEOBR states that "[t]his subtitle supersedes any other law of the State, a county, or a municipal corporation that conflicts with this subtitle."

## A.

## Statutory Construction

■ We turn first to the principles of statutory construction. Our goal when engaging in statutory interpretation is "to ascertain and effectuate the intention of the legislature." *Johnson v. Mayor of Balt. City,* 387 Md. 1, 11, 874 A.2d 439, 445 (2005); *O'Connor v. Balt. County,* 382 Md. 102, 113, 854 A.2d 1191, 1198 (2004).

■ As this Court has explained, "[t]o determine that purpose or policy, we look first to the language of the statute, giving it its natural and ordinary meaning." *State Dept. of Assessments and Taxation v. Maryland–Nat'l Capital Park & Planning Comm'n,* 348 Md. 2, 13, 702 A.2d 690, 696 (1997); *Montgomery County v. Buckman,* 333 Md. 516, 523, 636 A.2d 448, 452 (1994). This step is the point in statutory construction "with which the search for legislative intent begins, and ordinarily ends." *FOP, Montgomery County Lodge No. 35 v. Mehrling,* 343 Md. 155, 174, 680 A.2d 1052, 1062 (1996). "When the statutory language is clear, we need not look beyond the statutory language to determine the Legislature's intent." *Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.,* 346 Md. 437, 445, 697 A.2d 455, 458 (1997).

■ If the language of the statute is ambiguous, then "courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of [the] enactment [under consideration]." *Mehrling,* 343 Md. at 173–74, 680 A.2d at 1062 (quoting *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 75, 517 A.2d 730, 732 (1986)). In construing a statute, "we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense." *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106, 112 (1994).

■ In addition, " '[t]he meaning of the plainest language is controlled by the context in which it appears.' " *State v. Pagano,* 341 Md. 129, 133, 669 A.2d 1339, 1341 (1996) (citations omitted). As this Court has stated,

[b]ecause it is part of the context, related statutes or a statutory scheme that fairly bears on the fundamental issue of legislative purpose or goal must also be considered. Thus, not only are we required to interpret the statute as a whole, but, if appropriate, in the context of the entire statutory scheme of which it is a part.

*Gordon Family Partnership v. Gar on Jer,* 348 Md. 129, 138, 702 A.2d 753, 757 (1997) (citations omitted).

Lastly, we have stated that " '[w]here statutes relate to the same subject matter, and are not inconsistent with each other, they should be construed together and harmonized where consistent with their general object and scope.' " *Gwin v. Motor Vehicle Admin.,* 385 Md. 440, 462, 869 A.2d 822, 834 (2005) (citations omitted); *State v. Ghajari,* 346 Md. 101, 115, 695 A.2d 143, 149 (1997). Therefore, "when two statutes appear to apply to the same situation, this Court will attempt to give effect to both statutes to the extent that they are reconcilable." *Ghajari,* 346 Md. at 115, 695 A.2d at 149 (citations omitted); *Mayor of Oakland v. Mayor of Mountain Lake Park,* 392 Md. 301, 316–17, 896 A.2d 1036, 1045 (2006).

## B.

### The Law Enforcement Officer's Bill of Rights

The Maryland General Assembly enacted the LEOBR in 1974 for "the purpose of providing that all law enforcement officers have certain rights," 1974 Md. Laws, Chap. 722,[7] and for "provid[ing] a law-enforcement officer[8] . . . with *substantial procedural safeguards* during any inquiry

---

7. Courts also often look to the purpose clause of the session laws to determine the legislature's express purpose in enacting the legislation. *State v. Glass,* 386 Md. 401, 411, 872 A.2d 729, 735 (2005); *Drew v. First Guar. Mortgage Corp.,* 379 Md. 318, 326 n. 8, 842 A.2d 1, 6 n. 8 (2003).

8. In this context, a "law enforcement officer" is an individual who "in an official capacity is authorized by law to make arrests" and is a member of one of the twenty-two law enforcement agencies specified in the statute. Md.Code (2003), § 3–101 of the Public Safety Article.

into his [or her] conduct which could lead to the imposition of a disciplinary sanction." *Miner v. Novotny,* 304 Md. 164, 173, 498 A.2d 269, 273 (1985) (emphasis added). In *Moats v. City of Hagerstown,* 324 Md. 519, 530, 597 A.2d 972, 977 (1991), we held that "[t]he language, legislative history and comprehensive nature of the Law Enforcement Officers' Bill of Rights establishes that the procedures provided by the Act are an officer's exclusive remedy in matters of departmental discipline."

Included within the procedural safeguards of the LEOBR is the right to a hearing before a hearing board, if there is a possibility that the investigation or interrogation of the officer will result in "a recommendation of demotion, dismissal, transfer, loss of pay, reassignment, or similar action that is considered punitive," as well as the right of the officer to receive notice from the agency of his right to a hearing by the hearing board. Md.Code (2003), § 3–107 of the Public Safety Article. Some of the other notable procedural protections afforded to officers include "the right to be informed in writing of the nature of an investigation prior to any interrogation, the right to reasonable limitations on the structure, time, and place of an interrogation, the right to a complete written or transcribed record of any interrogation, the right to be notified of the name of any witness and all charges and specifications against the officer not less than ten days prior to any hearing, and the right to a copy of the investigatory file and any exculpatory information." *Mohan v. Norris,* 386 Md. 63, 67–68, 871 A.2d 575, 577–78 (2005); Md.Code (2003), § 3–104 of the Public Safety Article.

### The LEOBR and the Instant Case

We next turn our attention to the applicable provisions of the LEOBR to determine whether the Legislature, when it enacted the LEOBR in 1974, intended to provide agencies with the right to judicial review of the "not guilty" determinations of administrative hearing boards. To determine the intent of the Legislature, we begin with the plain language of the statute. *State Dept. of Assessments & Taxation v. Mary-*

*land–Nat'l Capital Park & Planning Comm'n,* 348 Md. 2, 12, 702 A.2d 690, 695 (1997). Because § 3–109(a) of the LEOBR is entitled "Judicial review," we begin our analysis with that provision to determine which decisions the General Assembly contemplated would be entitled to judicial review.[9]

Section 3–109(a) provides that "[a]n appeal from a decision made under § 3–108 [titled "Disposition of administrative action"] of this subtitle shall be taken to the circuit court for the county in accordance with Maryland Rule 7–202." Maryland Rule 7–202(a), provides that "[a] person seeking judicial review under this chapter shall file a petition for judicial review in a circuit court authorized to provide the review." The "General Provisions" set forth for the chapter[10] allow for judicial review only where it is "authorized by statute." Thus, it appears that an administrative agency may seek judicial review, under § 3–109 of the LEOBR, only in circumstances where it is expressly authorized by statute to do so. As a result, we examine the other provisions of the LEOBR to determine those circumstances in which the General Assembly expressly authorized judicial review of agency decisions.

The Commission contends that it is entitled to judicial review of "not guilty" findings pursuant to § 3–108 of the

---

9. Section 3–109. Judicial Review.
   By circuit court
   (a) An appeal from a decision made under § 3–108 of this subtitle shall be taken to the circuit court for the county in accordance with Maryland Rule 7–202.
   By Court of Special Appeals
   (b) A party aggrieved by a decision of a court under this subtitle may appeal to the Court of Special Appeals.

10. Maryland Rule 7–201. General Provisions.
    (a) **Applicability.** The rules in this Chapter govern actions for judicial review of (1) an order or action of an administrative agency, where judicial review is authorized by statute. . . .
    (b) **Definition.** As used in this Chapter, "administrative agency" means any agency, board, department, district, commission, authority, commissioner, official, the Maryland Tax Court, or other unit of the State or of a political subdivision of the State and the Client Protection Fund of the Bar of Maryland.

LEOBR,[11] because a right to such review can be inferred from

---

11. Section 3–108. Disposition of administrative action.

### In general

(a)(1) A decision, order, or action taken as a result of a hearing under Section 3–107 of this subtitle shall be in writing and accompanied by findings of fact.

(2) The findings of fact shall consist of a concise statement on each issue in the case.

(3) A finding of not guilty terminates the action.

(4) If the hearing board makes a finding of guilt, the hearing board shall:

(i) reconvene the hearing;

(ii) receive evidence; and

(iii) consider the law enforcement officer's past job performance and other relevant information as factors before making recommendations to the chief.

(5) A copy of the decision or order, findings of fact, conclusions, and written recommendations for action shall be delivered or mailed promptly to:

(i) the law enforcement officer or the law enforcement officer's counsel or representative of record; and

(ii) the chief.

### Recommendation of penalty

(b)(1) After a disciplinary hearing and a finding of guilt, the hearing board may recommend the penalty it considers appropriate under the circumstances, including demotion, dismissal, transfer, loss of pay, reassignment, or other similar action that is considered punitive.

(2) The recommendation of a penalty shall be in writing.

### Final decision of hearing board

(c)(1) Notwithstanding any other provision of this subtitle, the decision of the hearing board as to findings of fact and any penalty is final if:

(i) a chief is an eyewitness to the incident under investigation; or

(ii) a law enforcement agency or the agency's superior governmental authority has agreed with an exclusive collective bargaining representative recognized or certified under applicable law that the decision is final.

(2) The decision of the hearing board then may be appealed in accordance with § 3–109 of this subtitle.

(3) Paragraph (1)(ii) of this subsection is not subject to binding arbitration.

### Review by chief and final order

(d)(1) Within 30 days after receipt of the recommendations of the hearing board, the chief shall:

(i) review the findings, conclusions, and recommendations of the hearing board; and

(ii) issue a final order.

(2) The final order and decision of the chief is binding and then may be appealed in accordance with Section 3–109 of this subtitle.

that provision. Officer Anderson counters that the Legislature did not expressly include in the LEOBR the agency's right to judicial review of a "not guilty" finding, and, in fact, purposely excluded that right. Officer Anderson further argues that, if the Legislature intended to permit judicial review after a finding of "not guilty," all it had to do was say so. Conversely, the Commission observes that the Legislature provided express language to designate the point of finality for a finding of guilt, to discourage officers from appealing the findings of the administrative board before the chief had reviewed and altered them, not in order to exclude review of a "not guilty" finding. The Commission also argues that, instead, the Legislature made no such express statement about the point at which a finding of "not guilty" is reviewable, because the ending point is clear from the statute. We reject the Commission's interpretation of the LEOBR. Accordingly, we hold that, under the LEOBR, a party is authorized to seek judicial review only in cases where the decision of the hearing board results in a "guilty" determination and meets the additional statutory requirements for judicial review. By reading together the provisions of § 3–108 and § 3–109, we are confident that the General Assembly did not intend for a "not guilty" finding to be considered a decision that is subject to judicial review.

---

(3) The recommendation of a penalty by the hearing board is not binding on the chief.

(4) The chief shall consider the law enforcement officer's past job performance as a factor before imposing a penalty.

(5) The chief may increase the recommended penalty of the hearing board only if the chief personally:

(i) reviews the entire record of the proceedings of the hearing board;

(ii) meets with the law enforcement officer and allows the law enforcement officer to be heard on the record;

(iii) discloses and provides in writing to the law enforcement officer, at least 10 days before the meeting, any oral or written communication not included in the record of the hearing board on which the decision to consider increasing the penalty is wholly or partly based; and

(iv) states on the record the substantial evidence relied on to support the increase of the recommended penalty.

The first basis of support for our decision comes from our reading of § 3–108(a)(3), which is the only subsection that makes reference to "not guilty" findings. Section 3–108(a)(3) expressly states that "[a] finding of not guilty terminates the action." The parties in the instant case disagree as to whether "terminate" means that the proceeding is ended and no longer subject to review, or whether the proceeding is final for the purposes of further review. In our view, the language of that provision, when read in context, clearly and unambiguously elucidates the General Assembly's intent to end the administrative proceedings upon a finding of "not guilty." In this regard, a finding of "not guilty" does constitute a final decision in the context of our previous decisions. With regard to the finality of an administrative agency decision, we have previously stated that:

> ordinarily[,] the action of an administrative agency, like the order of a court, is final if it determines or concludes the rights of the parties, or if it denies the parties means of further prosecuting or defending their rights and interests in the subject matter in proceedings before the agency, thus leaving nothing further for the agency to do.

*Maryland Comm'n on Human Relations,* 296 Md. at 56, 459 A.2d at 211. Because the General Assembly stated explicitly that a finding of not guilty "terminates the action," there is clearly nothing further for the agency to do, and the decision is therefore final within the contemplation of this definition.

While the Board's "not guilty" finding constitutes a final decision, it does not meet the additional requirements set forth by the Legislature, in § 3–108, that would classify the decision as one that is entitled to judicial review under the LEOBR. We observed in *Miner v. Novotny,* 304 Md. 164, 173–74, 498 A.2d 269, 273 (1985), that

> [i]f the board finds the officer innocent of the charge, that ends the proceeding. If it finds him guilty, it then makes a recommendation to the chief of police as to an appropriate punishment. The chief is bound by a determination of innocence, but not a proposed punishment in the event of a

finding of guilt. As to that, his decision (rather than that of the Board) is final.

If the Legislature intended for "not guilty" findings to be reviewable, it could have included language to express that intention, rather than stating that the action is terminated. Instead, the Legislature spent the remainder of subsection (a) discussing the disposition of administrative actions where the hearing board actually enters a finding of "guilty." Specifically, §§ 3–108(a)(4) and (a)(5) state that if the hearing board makes a finding of "guilty," it must reconvene the hearing, receive evidence and consider the officer's past job performance and other relevant factors before making a recommendation to the Chief [12] regarding a penalty.[13]

Section 3–108 (d)(1), "Review by chief and final order," continues by describing one of the two ways in which a decision of the hearing board can fulfill the additional requirements and become subject to judicial review. Section 3–108(d)(1) indicates that within thirty days of receipt of the hearing board's recommendation, the chief must review the hearing board's findings, conclusions and recommendations and "issue a final order." Subsection (d)(1) further provides that "[t]he final order and decision of the chief is binding and then may be appealed in accordance with § 3–109 of this subtitle." The Legislature's lengthy prescription of all that the Board and police chief must accomplish before a "guilty" decision becomes subject to judicial review and its failure to include any similar language when addressing findings of "not guilty," persuades us that a hearing board's decision must be a finding of "guilty" to be considered reviewable under the LEOBR. Furthermore, the Legislature's use of the word "then" signals when an agency can seek judicial review of a

---

12. Chief means "the head of a law enforcement agency" and "includes the officer designated by the head of the law enforcement agency."

13. Some of the penalties that the hearing board may consider and recommend to the chief include demotion, dismissal, transfer, loss of pay, reassignment, or other similar, punitive action. Md.Code (2003), § 3–108(b)(1) of the Public Safety Article.

hearing board's decision, after all of the requirements are fulfilled.

We derive additional support for this interpretation from the language of § 3–108(c)(1), titled "Final decision of hearing board," which sets forth additional requirements that a hearing board decision must meet before that decision becomes reviewable. This provision states that the hearing board's decision as to findings of fact and any penalty is final if the chief is an eyewitness to the incident that is under investigation or "a law enforcement agency or the agency's superior governmental authority has agreed with an exclusive collective bargaining [14] representative recognized or certified under applicable law that the decision is final." Subsection (c)(2) further provides that "[t]he decision of the hearing board then may be appealed in accordance with § 3–109 of this subtitle." Again, we are persuaded that the Legislature intended only for "guilty" decisions to be reviewable because the Legislature made a finding of guilt a prerequisite for the other requirements needed to render a decision ripe for review. If the Legislature intended otherwise, then it certainly knew how to include the same or similar language when discussing the findings of "not guilty," as it did for findings of "guilty." To the contrary, the Legislature expressly stated that a "not guilty" finding "terminates the action." When read in context with the other provisions of § 3–108 and § 3–109, the statutory language is clear. Thus, we need not look any further to discern the legislative intent as to when a hearing board decision is reviewable. *Marriott Employees Fed. Credit Union,* 346 Md. at 445, 697 A.2d at 458.

### The Conflict between the LEOBR and APA

The Commission argues that the APA and the LEOBR do not conflict, and therefore the LEOBR does not supersede the APA. The Commission notes that this Court "has previously

---

14. Collective bargaining is defined as "[n]egotiation between an employer and the representatives of organized employees to determine the conditions of employment, such as wages, hours, discipline, and fringe benefits." BLACK'S LAW DICTIONARY 280 (8th ed.1999).

harmonized the APA and the LEOBR and even specifically given effect to the provisions of the APA addressing the scope of judicial review in the context of an appeal from [an] LEOBR decision."[15] Officer Anderson argues that the LEOBR conflicts with the APA because, in her view, the plain meaning of the language in the LEOBR provides that judicial review of an administrative hearing board's "not guilty" finding is not permitted.

■ We conclude that the APA is not the controlling statute in this case because the General Assembly intended for the LEOBR to provide an exclusive remedy for police officers when faced with disciplinary action. In *Moats*, we stated that "when the General Assembly enacts a comprehensive administrative remedial scheme, that administrative remedy is generally deemed exclusive [and] [t]he Law Enforcement Officers' Bill of Rights provides such a comprehensive remedial

---

**15.** The Commission relies on *Tippery v. Montgomery County Police Dept.*, 112 Md.App. 332, 346–47, 685 A.2d 788, 795–96 (1996), which quotes this Court's language in *Younkers v. Prince George's County*, 333 Md. 14, 17, 633 A.2d 861, 862 (1993), *reversing in part Prince George's County v. Younkers*, 94 Md.App. 48, 615 A.2d 1197 (1992) (stating that "[w]hen a state police agency is involved, the state Administrative Procedure Act (APA) applies, and the scope of judicial review is spelled out by § 10–222(h)(3) of that Act"). *See also Coleman v. Anne Arundel County Police Dept.*, 369 Md. 108, 138, 797 A.2d 770, 788 (2002) (defining the standard of proof for judicial review of LEOBR board decisions of the Anne Arundel County Police Department pursuant to APA § 10–202(b)). The cases relied upon by the Commission in support of the contention that the LEOBR does not conflict with the APA are distinguishable from the instant case. First, all of the cases pertain to judicial review of a "guilty" decision, where the petition for judicial review was brought by an officer. *Younkers*, 333 Md. at 17, 633 A.2d at 862; *Coleman*, 369 Md. at 114–15, 797 A.2d. at 774; *Tippery*, 112 Md.App. at 334, 685 A.2d at 789.

In the instant case, we have a petition for judicial review of a "not guilty" finding filed by the Commission. Further, these cases are not specifically applicable here because they deal with the scope of judicial review once review has been authorized, and the question before this Court is one of first impression: whether review is authorized from a "not guilty" finding. Although not directly on point, the cases cited by the Commission lend support to the argument that the LEOBR and the APA should be harmonized, where not expressly in conflict.

scheme." *Moats,* 324 Md. at 529–30, 597 A.2d at 977.[16]  As we stated in *Moats,* "[w]e believe that the LEOB[ ]R, an extremely comprehensive statute requiring nearly twenty pages in the Maryland Annotated Code, provides an 'adequate and available' procedure...." *Moats,* 324 Md. at 524, 597 A.2d at 974. As in *Moats,* we hold that the LEOBR is an exclusive remedy.

We agree with Officer Anderson that the Legislature did not authorize judicial review of a "not guilty" finding under the LEOBR and that the LEOBR and the APA are therefore in conflict on this point.  To discern the legislative intent regarding reviewability of board decisions resulting in findings of "not guilty" under the APA, we need not look any further than the plain language of § 10–222.[17]  Section 10–222(a)(1) states that "a party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision." While the General Assembly chose to set forth other prerequisites for judicial review (in addition to a finding of "guilty") in § 3–108(c)(1) and (d)(1) of the LEOBR, the Gener-

---

**16.** The dissent in the present case points out that the APA overruled the *McKinney-Peco* doctrine, thereby entitling an agency to seek judicial review of its final administrative decisions in a contested case, so long as the agency was a party to the action. Dissent, op. at 205–06, 909 A.2d at 714.  We agree that the 1993 revisions to the APA provided agencies with the right to seek judicial review of decisions in certain circumstances.  We reject the contention, however, that the APA provides the Commission with the right to judicial review in the present case because the LEOBR is the controlling statute.  The LEOBR controls because it was enacted to protect law enforcement officers, in part, by providing an exclusive remedy in proceedings like the proceeding at issue in the present case.  This exclusive remedy permits the officer, if found guilty, to seek judicial review of that decision.  If the officer is found not guilty, the LEOBR permits the officer to move beyond the proceedings and treat the matter as terminated.

**17.**  § 10–222. Judicial Review.
(a) *Review of final decision.*—(1)  Except as provided in subsection (b) of this section, a party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision as provided in this section.
(2) An agency, including an agency that has delegated a contested case to the Office, is entitled to judicial review of a decision as provided in this section if the agency was a party before the agency or the Office.

al Assembly, under § 10–222, required only that a party be aggrieved before it is authorized to seek review of a final decision under the APA. While we endeavor to harmonize the applicable provisions of the APA and LEOBR, we can do so only to the extent that they are consistent with each other, *Gwin,* 385 Md. at 462, 869 A.2d at 834, and to the extent that they are reconcilable. *Ghajari,* 346 Md. at 115, 695 A.2d at 149.

Because the General Assembly, pursuant to § 10–222, provided that only an aggrieved party may obtain judicial review of a final agency decision, we must conclude that this section conflicts with the LEOBR, which restricts judicial review to those situations described, *infra.* Specifically, the LEOBR limits judicial review to the final decisions of the Chief, pursuant to § 3–108(d)(1), or his designee, pursuant to § 3–108(c)(1). These limitations on the right to judicial review under the LEOBR create a direct conflict between the LEOBR and the APA in that no such limitations are contained in the language of APA. Therefore, the LEOBR and APA are inconsistent, irreconcilable and cannot be harmonized as to matters that are subject to judicial review. In our view, that conflict must be resolved in favor of the law enforcement officer and not the Commission for two different reasons.

First, the General Assembly clearly evidenced its intent that the LEOBR control in this situation by including specific language to that effect when it drafted the LEOBR. Section 3–102, "Effect of Subtitle," states that " . . . this subtitle supersedes any other law of the State, a county, or a municipal corporation that conflicts with this subtitle." By including this language, the Legislature expressly noted its desire that the LEOBR control over any conflicting statute, including the APA. We have stated that "one can scarcely imagine a clearer statement of the scope of the LEOBR. The subtitle is to be a law that is supreme and all-encompassing, within its State-wide sphere of operations." *Moats,* 324 Md. at 527, 597 A.2d at 976. Because the APA conflicts with the LEOBR as to whether an agency can seek judicial review of a "not guilty"

finding, the LEOBR controls and we further conclude that the Commission is not entitled to review in this case.

In addition, the LEOBR supersedes the APA because the LEOBR was written with the express purpose of protecting the rights of police officers who work for specific state agencies, while the APA was written to apply more broadly to "all State administrative agencies not specifically exempted." *See* "Applicability" note, Md.Code (1984, 2004 Repl.Vol.), § 10–201 of the State Government Article. The LEOBR, therefore, applies only to a specific subset of individuals who work for specific state agencies, whereas the APA applies to these individuals and globally to all other individuals working for all other State agencies (unless specifically exempted by the APA). "It is well settled that when two statutes, one general and one specific, are found to conflict, the specific statute will be regarded as an exception to the general statute." *Ghajari*, 346 Md. at 116, 695 A.2d at 150 (citing *Farmers & Merchants Bank v. Schlossberg*, 306 Md. 48, 63, 507 A.2d 172, 180 (1986)). In *Ghajari*, we stated that when the statutes conflict, "the specific statute is controlling and the general statute is repealed to the extent of the inconsistency." *Ghajari*, 346 Md. at 116, 695 A.2d at 150. In such a case, "the court should give effect to the specific statute in its entirety and should retain as much of the general statute as is reasonably possible." *Id.* As a result, the LEOBR controls and the Commission is not entitled to judicial review of the Board's decision.[18]

## CONCLUSION

We hold that within the contemplation of the provisions of the LEOBR, the Commission may not seek judicial review of

---

18. The parties raise other arguments concerning whether the Commission is an aggrieved party under the LEOBR or the APA and whether judicial review of the Board's finding of "not guilty" would violate Double Jeopardy. Because of our holding that a "not guilty" finding is not entitled to judicial review, we need not and do not address Anderson's contentions that the Commission is not an aggrieved party under either the LEOBR or the APA and that judicial review of the Board's decision would violate Double Jeopardy.

the Board's findings of "not guilty." The LEOBR does not authorize judicial review because the Board's finding of "not guilty" did not meet the additional requirements for review set forth in §§ 3–108(c)(1) or (d)(1). We also hold that the LEOBR does conflict with the APA as to whether an agency can seek review of a "not guilty" decision. The LEOBR provides an exclusive remedy and is the controlling statute and therefore supersedes the conflicting provision of the APA. Therefore, the Commission is not entitled to seek judicial review.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.**

HARRELL, J., Dissents.

Dissenting Opinion by HARRELL, J.

I respectfully dissent. While the principles of statutory construction recounted in the Majority opinion, as far as they go, are well-settled, the Majority fails to apply them correctly to analyze properly how the two statutory schemes at issue operate. Because the principles of statutory construction instruct us to harmonize, whenever possible, statutes relating to the same general subject matter, Md.Code (2003) §§ 3–108(a)(3) and 3–109 of the Public Safety Article, Law Enforcement Officers' Bill of Rights (LEOBR) may, and should, be read as consistent with Md.Code (1984, 2004 Repl.Vol.), § 10–222(a) of the State Government Article—the State Administrative Procedure Act (APA). I would hold therefore that the Commission was entitled to judicial review of its administrative hearing board's finding of "not guilty." Properly construed, there is no conflict between the APA and the LEOBR. Accordingly, I would reverse the judgment of the Court of Special Appeals, and remand the case to that court with directions to reverse the judgment of the Circuit Court for Prince George's County and remand to the Circuit Court for judicial review of the Board's "not guilty" finding.

## I. Procedural and Factual Background

On 17 October 2001, the Commission administratively charged Officer Kathleen Anderson of the Maryland–National Capital Park Police Department with violation of its Bi–County Directive 414.0 dealing with "Fresh Pursuit" by its officers.[1] On 13–14 March 2003, the Commission's "Hearing Board"[2] ("Board") conducted a hearing at which testimony from several officers, including Officer Anderson, was heard. After a brief deliberation, the Board rendered a finding of "NOT GUILTY" on all charges. The Board entered its findings on 30 June 2003, and released its written decision, entitled "Decision of Hearing Board Relative to PO Kathleen Anderson." On 25 July 2003, the Commission petitioned the Circuit Court for Prince George's County for judicial review of that decision. Officer Anderson responded with a motion to dismiss, which was granted by the Circuit Court. In a reported opinion filed on 30 September 2005, the Court of Special Appeals affirmed the judgment of the Circuit Court, holding that:

> Because a grant to the Commission under the APA of a right to judicial review of an adverse trial board decision

---

1. Bi–County Directive 414.0 of the Maryland–National Capital Park Police Department's vehicle pursuit policy states that

   Fresh pursuit is only allowed when an officer has probable cause to believe that the fleeing suspect has committed or is attempting to commit the following:
   - Any felony involving the use of force or threat of physical force against a person.
   - A hit and run traffic accident resulting in death or serious injury. Any other pursuits are prohibited.

   The Commission alleged that, on 8 September 2001, Anderson impermissibly engaged in a "pursuit" when she attempted to stop a stolen vehicle. The vehicle's occupants refused to stop before ultimately abandoning the vehicle and proceeding on foot.

2. The "Hearing Board" is the Commission's internal adjudicative administrative tribunal "authorized by the chief to hold a hearing on a complaint against a law enforcement officer." Md.Code (2003), Public Safety Article, § 3–101(d). Its creation and role is as directed in the LEOBR. As observed by the Majority opinion, the Board is composed of three police officers chosen by the chief of the Commission's Prince George's County Park Police Department, as required by the LEOBR.

conflicts with the LEOBR, appellant cannot find safe harbor in the APA. As to the Commission's right to judicial review, the statutory silence in P.S. § 3–108(a)(3) is deafening. We hold that, under P.S. § 3–108(a)(3), the Commission is not entitled to judicial review of a not guilty finding rendered by the Board.

*Maryland–National Capital Park & Planning Comm'n v. Anderson,* 164 Md.App. 540, 581, 884 A.2d 157, 181 (2005). We granted the Commission's petition for certiorari. *Park & Planning v. Anderson,* 390 Md. 500, 889 A.2d 418 (2006).

## II. Discussion

As an initial matter, both the State APA and the LEOBR ordinarily apply to administrative disciplinary proceedings involving law enforcement officers employed by State agencies such as that in the present case. *Younkers v. Prince George's County,* 333 Md. 14, 17, 633 A.2d 861, 862 (1993) ("When a state police agency is involved, the State Administrative Procedure Act (APA), and the scope of judicial review is spelled out by §§ 10–222(h)(3) of that Act."); *see also Bragunier Masonry Contractors v. Md. Comm'r of Labor & Indus.,* 111 Md.App. 698, 705, 684 A.2d 6, 9 (1996), *cert. denied,* 344 Md. 566, 688 A.2d 445 (1997) (holding that "the APA applies to all state administrative agencies not specifically exempted and provides a standard framework of fair and appropriate procedures for agencies that are responsible for both administration and adjudication of their respective statutes").[3]

The Majority Opinion correctly states that "[t]o determine that purpose or policy [of legislation], we look first to the language of the statute, giving it its natural and ordinary meaning." Maj. op. at 182, 909 A.2d at 699 (internal citations omitted). Additionally, the Majority Opinion quite properly acknowledges the well-settled principles of statutory construc-

---

**3.** Maryland Code (2003) § 3–101(e)(1)(ii)(8) of the Public Safety Article expressly provides that the LEOBR applies to the Prince George's County Park Police Department, a "police department, bureau, or force of a bicounty agency" under the statute.

tion that "[i]f the statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as written. . . . If, however, the statutory text reveals ambiguity, 'then the job of the Court is to resolve that ambiguity in light of the legislative intent, using all of the resources and tools of statutory construction at our disposal.' " *Mackey v. Compass,* 391 Md. 117, 141, 892 A.2d 479, 493 (2006) (quoting *Price v. State,* 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003)).

The Majority even acknowledges that, when determining the legislative intent of a statutory enactment, the words used must be given their ordinary meaning in light of the full context in which they appear. Maj. op. at 182–83, 909 A.2d at 700.[4] Yet, the Majority Opinion holds that "[t]o discern the legislative intent regarding reviewability of board decisions resulting in findings of 'not guilty' under the APA, we need not look any further than the plain language of § 10–222." Maj. op. at 192, 909 A.2d at 706. In this case, we are called upon to construe not only the LEOBR, but also related provisions of the State APA and how the two statutes operate in tandem. It is unfortunate that, in its analysis, the Majority fails to consider properly the context in which § 10–222(a) was enacted, and rushes by an important portion of the analysis necessary to solve this legislative puzzle. *See State v. Pagano,* 341 Md. 129, 133, 669 A.2d 1339 (1996) ("The 'meaning of the plainest language is controlled by the context in which it

---

4. In *Cain v. State,* 386 Md. 320, 327–28, 872 A.2d 681, 685 (2005), we stated that

the best source of legislative intent is the statute's plain language and when the language is clear and unambiguous, our inquiry ordinarily ends there. Although the plain language of the statute guides our understanding of legislative intent, we do not read the language in a vacuum. Rather, we read statutory language within the context of the statutory scheme, considering the "purpose, aim, or policy of the enacting body."

(internal citations omitted); *see also State v. Thompson,* 332 Md. 1, 7, 629 A.2d 731, 734 (1993) (holding that even when words of a statutory enactment are clear and unambiguous, the Court is not precluded from examining the purpose of the statute through other material that sheds light on the fundamental legislative goal).

appears ... We may always consider evidence of legislative intent beyond the plain language of the statute.") (quoting *Kaczorowski v. Mayor & City Council of Baltimore*, 309 Md. 505, 514–15, 525 A.2d 628 (1987)).

While it is true that when two statutes are found to conflict, one general and one specific, the specific statute is considered an exception to the general statute, Maj. op. at 194–95, 909 A.2d at 707, we long have held that "[i]n order for one statute to alter or limit another, the intention of the Legislature to do so must be clear and manifest." *Drew v. First Guaranty Mortgage Corp.*, 379 Md. 318, 330, 842 A.2d 1, 8 (2003), quoting *Mayor & City Council of Baltimore v. Clerk of Superior Court*, 270 Md. 316, 319, 311 A.2d 261, 263 (1973). Specifically, if the two legislative acts can reasonably be construed together, so as to give effect to both, such a construction is preferred. *Harvey v. Marshall*, 389 Md. 243, 289, 884 A.2d 1171, 1199 (2005) ("[W]hen a statute 'is a part of a statutory scheme, the legislative intention is not determined from that statute alone, rather it is to be discerned by considering it in light of the statutory scheme,' and when 'in that scheme, two statutes, enacted at different times and not referring to each other ... address the same subject, they must be read together ... *i.e.*, interpreted with reference to one another, ... and harmonized ....' ") (citing *Gov't Employees Ins. Co. v. Ins. Comm'r*, 332 Md. 124, 132, 630 A.2d 713, 717 (1993)); *Bank of America v. Stine*, 379 Md. 76, 85, 839 A.2d 727, 733 (2003) (holding that when the statute to be interpreted is part of a larger statutory scheme relating to the same subject matter, the statutes must be read together, and harmonized to the extent possible) (citing *Mid–Atlantic Power Supply Ass'n v. Pub. Serv. Comm'n*, 361 Md. 196, 204, 760 A.2d 1087, 1091 (2000)); *see also Mayor & City Council of Baltimore*, 270 Md. at 319–20, 311 A.2d at 263 (holding that requirements of one statute will be construed as embodying provisions of other, and second statute will not be considered as a substitute for the first regardless of order in which they were enacted) (internal citations omitted).

Statutes which relate to the same thing or general subject matter and are not inconsistent with each other are said to be

*in pari materia,* and should be construed together so that they will harmonize with each other and be consistent with their general object and scope. *Gwin v. Motor Vehicle Admin.,* 385 Md. 440, 462, 869 A.2d 822, 835 (2005); *see also Mayor & Town Council of Oakland v. Mayor & Town Council of Mountain Lake Park,* 392 Md. 301, 316–17, 896 A.2d 1036, 1045 (2006), quoting *Pete v. State,* 384 Md. 47, 65–65, 862 A.2d 419, 429–30 (2004) (holding that when construing multiple statutes, we must presume that "the General Assembly acted with full knowledge of prior legislation and intended statutes affecting the same subject matter 'to blend into a consistent and harmonious body of law.' "). Furthermore, we read together statutes on the same subject and harmonize them to the extent possible, so as to avoid rendering either statute "or any portion of it, meaningless, surplusage, superfluous or nugatory." *Gwin,* 385 Md. at 462, 869 A.2d at 834 (internal citations omitted); *Mayor & Town Council of Oakland,* 392 Md. at 316–17, 896 A.2d at 1045. These principles of statutory construction apply even if the statutes were passed at different times and contain no specific reference to each other. *Harvey,* 389 Md. at 289, 884 A.2d at 1199.

Thus, when determining the interaction between two legislative enactments that overlap a subject matter, the principles of statutory interpretation instruct us to make every attempt to harmonize them, so long as the clear and unambiguous meaning of the language used supports such an interpretation.[5] As we most recently stated in *Kilmon v. State,* 394 Md. 168, 905 A.2d 306 (opinion filed 3 August 2006):

> Notwithstanding occasional flights of fancy that may test the proposition, the law necessarily and correctly presumes that Legislatures act reasonably, knowingly, and in pursuit of sensible public policy. When there is a legitimate issue

---

5. This Court repeatedly has held that the Legislature presumably intends its statutory enactments to "operate together as a consistent and harmonious body of law." *Toler v. Motor Vehicle Admin.,* 373 Md. 214, 220, 817 A.2d 229, 234 (2003), quoting *State v. Ghajari,* 346 Md. 101, 115, 695 A.2d 143, 149 (1997), in turn quoting *State v. Harris,* 327 Md. 32, 39, 607 A.2d 552, 555 (1992).

of interpretation, therefore, courts are required, to the extent possible, to avoid construing a statute in a manner that would product farfetched, absurd, or illogical results which would not likely have been intended by the enacting body. Stated simply and in the affirmative, courts must attempt to construe statutes in a *common sense manner.* *Kilmon,* 394 Md. at 177, 905 A.2d at 311 (emphasis added). *see also, e.g., Gilmer v. State,* 389 Md. 656, 663, 887 A.2d 549, 553 (2005); *Comptroller v. Citicorp,* 389 Md. 156, 169, 884 A.2d 112, 120 (2005); *Moore v. State,* 388 Md. 446, 453, 879 A.2d 1111, 1115 (2005); *Cain,* 386 Md. at 328, 872 A.2d at 686; *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106, 112 (1994) (holding that the Court's interpretation of a particular statutory enactment should "seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense"); *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 75, 517 A.2d 730 (1986) ("[W]here a statute is plainly susceptible of more than one meaning and thus contains an ambiguity, courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment. In such circumstances, the court, in seeking to ascertain legislative intent, may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.") (internal citations omitted).

### III. Application of the Full and Relevant Principles of Statutory Construction to the Statutes in Question.

Turning to the statutes at issue in this case, the legislative setting surrounding the enactment of the LEOBR and the APA compels the conclusion that the Legislature did not intend to preclude judicial review of a "not guilty" finding by the Board.

*Section 10–222(a) of the APA Provides for Judicial Review*

Section 10–222(a) of the APA explicitly confers on covered State agencies the right to seek judicial review of the agency's

final administrative decision where the decision was made by either an internal (i.e. the Board in the case *sub judice* ) or external (i.e. an Administrative Law Judge of the Maryland Office of Administrative Hearings) administrative tribunal, to which the agency, or, in this case, the LEOBR, delegated the authority to make a final decision in the agency's name.[6] Before 1993, "Maryland jurisprudence had traditionally taken a narrow view regarding the capacity of an administrative agency to seek judicial review of its own decisions." *Comm'n on Human Relations v. Anne Arundel County,* 106 Md.App. 221, 236, 664 A.2d 400, 408 (1995). This narrow view, referred to as the *McKinney–Peco* doctrine, evolved from two decisions of this Court in *Board of Zoning Appeals v. McKinney,* 174 Md. 551, 199 A. 540 (1938), and *Maryland Board of Pharmacy v. Peco, Inc.,* 234 Md. 200, 198 A.2d 273 (1964). These cases stood for the proposition that an agency was precluded from seeking appellate review of a circuit court decision when the circuit court overruled the agency's final administrative decision upon judicial review.

In *McKinney,* this Court was called upon to decide whether the Board of Zoning Appeals was able properly to seek judicial review in an appellate court, when a circuit court reversed and annulled the Board's final zoning decision. 174 Md. at 556, 199 A. at 542. There, we reasoned that an administrative agency exercises quasi-judicial and judicial

---

**6.** Section 10–222 of the State APA provides:

   (a) *Review of final decision.*—(1) Except as provided in subsection (b) of this section, a party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision as provided in this section.

   (2) An agency, including an agency that has delegated a contested case to the Office, is entitled to judicial review of a decision as provided in this section if the agency was a party before the agency or the Office.

We need not consider here whether a final administrative decision by the Chief of the Park Police (the "agency head" for purposes of most law enforcement officer disciplinary matters within the Commission) in a contested case may thereafter be the subject of a petition for judicial review initiated by the Chief, although the language of § 10–222(a) is broad enough to make that a viable contention.

powers when adjudicating cases before it, and has no interests in its decisions other than to decide the cases that come before it in a fair and impartial manner. *McKinney,* 174 Md. at 564, 199 A. at 546. We therefore concluded that because

> the Board [was] not a party to this proceeding, ha[d] no interest in it different from that which any judicial or quasi-judicial agency would have, which [was] to decide the cases coming before it fairly and impartially, [was] in no sense aggrieved by the decision of the Baltimore City Court, and ha[d] no statutory right of appeal, it had no power to take this appeal, and the appeal must be dismissed.

*Id.*

In *Peco,* following the reasoning of *McKinney,* we held that the Maryland Board of Pharmacy was *not* entitled to appellate review of a decision of the circuit court reversing the Board's denial of a permit to open a pharmacy. We reasoned that "[t]he Board's function in acting upon an application for permit under the statute is quasi-judicial and not adversary. It is only a party in the circuit court for the purpose of producing the record ..., or notifying the parties 'to the proceeding before it.' " *Peco,* 234 Md. at 202, 198 A.2d at 274. The reasoning undergirding the *McKinney–Peco* doctrine was applied several times in subsequent years. See, for example, *Board of County Comm'rs v. H. Manny Holtz, Inc.,* 60 Md.App. 133, 141, 481 A.2d 513, 517 (1984), where the Court of Special Appeals held that:

> [T]he disqualification, or lack of standing [of the agency], arises ultimately from the proposition that the agency is not a party to the administrative proceeding before it. That is why it has no cognizable interest in the outcome of the proceeding; that is why it is not regarded as a proper party in the circuit court, even as a respondent/appellee; and that is why it has no authority to appeal from a judgment of the circuit court that reverses or modifies its administrative decision.

Although the *McKinney–Peco* doctrine applied primarily to an administrative agency's attempts to secure appellate review

of a circuit court's reversal of the agency's final decision, the Court of Special Appeals has held that the doctrine likely would have applied with equal force in instances where the agency sought circuit court reversal of its own final administrative decision. *Comm'n on Human Relations v. Anne Arundel County,* 106 Md.App. at 237–38, 664 A.2d at 408 ("The principles espoused in *McKinney* and *Peco,* although stated in the context of an agency's effort to overturn the circuit court's reversal of its own decision, would thus appear to apply with equal force under circumstances in which an agency appears to seek a court reversal of its own final decision. In both instances, it can be said that, absent statutory authority, an administrative agency that has itself supplied the final decision of the agency is not an aggrieved party or a proper party on appeal.").[7]

---

**7.** In *Comm'n on Human Relations,* the Court of Special Appeals addressed whether the Commission on Human Relations could seek review in the Circuit Court of Anne Arundel County, when the Commission's internal appeals board dismissed the Commission's complaint against the county fire department for employment discrimination. There, the Court of Special Appeals held that it could not, because it appeared that the Commissioners themselves had not authorized the appeal. Instead, the Executive Director of the Commission and the Commission's general counsel unilaterally had done so. *Comm'n on Human Relations,* 106 Md.App. at 239–40, 664 A.2d at 409–10. The Court of Special Appeals concluded:

> We believe that, for a petition for judicial review by the Commission to be proper under §§ 10–222 of the APA, it must be approved by the appropriate individual or group of individuals comprising the agency, within whom is reposed the ultimate legal authority to pursue such review. Assuming, without deciding, that §§ 10–222 stands for the proposition that the Human Relations Commission can appeal from its own appeal board's decision, the authority to seek judicial review in a contested case rests with the nine Commissioners. Because the power to authorize judicial review rests exclusively in the "agency" by statute, the Commissioners themselves must sanction any determination to adjudicate a contested employment discrimination case beyond the decision of an appeal board of the Commission.

*Comm'n on Human Relations,* 106 Md.App. at 241, 664 A.2d at 410. Thus, while the language quoted in the main text above seemingly forbids judicial review of a decision like the one in the case *sub judice,* as will be described below, the *McKinney–Peco* doctrine, on which the quotation relied, since has been abrogated by the Legislature by the adoption of § 10–222(a).

Section 10–222(a) was added by the Legislature to the APA in 1993 by Chapter 59, of the Acts of 1993. In addition to "revising provisions of the Administrative procedure act relating to contested cases; [and] altering the scope of that law with regard to its applicability to certain agencies," the express purpose of these enactments was to alter the provisions of the APA relating to judicial review. Ch. 59, of the Acts of 1993.

The 1993 enactment was a direct result of a report and recommendation from the *Commission to Revise the Administrative Procedure Act* ("APA Commission"), which studied the need to revise the predecessor APA. One of the express issues the APA Commission engaged was whether to continue to follow or overrule the *McKinney–Peco* doctrine prohibiting an agency from appealing from its own final administrative action. With respect to state administrative agencies subject to the APA, the APA Commission recommended that the General Assembly enact § 10–222(a) in order to overturn the doctrine, and abrogate the principle that an administrative was not an "aggrieved party" for the purposes of judicial review. *See Report of the Commission to Revise the Administrative Procedure Act: Initial Report on Subtitles 2 and 4 of the APA*, 10, 55–57 (1 September 1992). More specifically, the APA Commission recommended that "when final administrative decisions resolving issues between private parties and the government are issued by the OAH or an agency, the *McKinney–Peco* doctrine should not apply. Both parties should be permitted to pursue judicial review of the decision." *Report of the Commission to Review the Administrative Procedure Act: Initial Report of Subtitles 2 and 4 of the APA*, 8, 334–35.

The Legislature agreed, and in Chapter 59 of the Acts of 1993, enacted § 10–222(a). The General Assembly also enacted § 10–223(b) at the same time, which overturned the specific appellate impact of the *McKinney–Peco* doctrine. Section 10–223(b) provides

(b) *Right of Appeal.*—(1) A party who is aggrieved by a final judgment of a circuit court under this subtitle may

appeal to the Court of Special Appeals in the manner that law provides for appeal of civil cases.

(2) An agency that was a party in the circuit court may appeal under paragraph (1) of this subsection.

(emphasis added). Thus, under the prevailing iteration of the APA, an agency is expressly entitled to seek judicial review of its final administrative decision in a contested case, provided that the agency was a party in the agency action. Md.Code (1984, 2004 Repl.Vol.), State Gov't Art., § 10–222(a)(2). Because the Commission in the present case was the prosecutor of the charges brought against Officer Anderson, I would hold that the Commission clearly was entitled to judicial review under the State APA.[8]

### Does APA § 10–222(a) Conflict with the LEOBR?

Taking into consideration the legislative context surrounding the enactment of § 10–222(a) of the APA, it is necessary to determine whether it conflicts with the provisions of the LEOBR. As the Majority Opinion states, this is significant because the LEOBR would control if any conflict existed. Section 3–102(a) of the LEOBR.[9] Thus, unless the LEOBR conflicts with § 10–222(a) of the APA in some way, the APA controls in the instant case and allows the Commission to seek judicial review of the Board's "not guilty" finding.

Although the LEOBR regulatory scheme was adopted initially in 1974,[10] Maryland Code (2003) § 3–108(a)(3) of the

---

**8.** Furthermore, as the employer of Officer Anderson, and as the promulgator of the "hot pursuit" policy which she was found "not guilty" of violating by the Board, the Commission had both an immediate and prospective interest in vindicating its view of the proper interpretation and application of its policy vís a vís the Board's contrary determination in Officer Anderson's case.

**9.** Codified at Md.Code (2003), § 3–102(a) of the Public Safety Article, the LEOBR provides that "this subtitle supersedes any other law of the State, a county, or a municipal corporation that conflicts with this subtitle."

**10.** Ch. 722 of the Acts of 1974. The predecessor to § 3–108 was codified at Maryland Code (1957) Article 27, § 731, and provided:

Public Safety Article, which states that "[a] finding of not guilty terminates the action," first saw light of day on or about 28 March 1977, when it was proposed by the House Judiciary Committee as an amendment to the version of S.B. 1026 referred to it by the Senate, without this language.[11] Nothing in that enactment, or for that matter any provision in the LEOBR, however, conflicts with § 10–222(a) of the APA.

Section 3–109 of the Public Safety Article addresses judicial review of a "final" administrative decision made under the LEOBR.[12] Section 3–108 merely addresses when the administrative decision actually becomes final,[13] for purposes of trig-

---

Any decision, order or action taken as a result of the hearing shall be in writing and shall be accompanied by findings of act. The findings shall consist of a concise statement upon each issue in the case. A copy of the decision or order and accompanying findings and conclusions, along with written recommendations for action, shall be delivered or mailed promptly to the law enforcement officer or to his attorney or representative.
Ch. 722 at 2461, the Acts of 1974, Vol. II.

11. The bill file contains a "Master Copy" of S.B. 1026, as adopted by the Senate initially on 26 March 1977 and without this language, with the relevant provision as a handwritten, interlineated addition. The House Judiciary Committee's notes on S.B. 1026 reflect the added language as Amendment No. 11. The House adopted its amended version of S.B. 1026 on 8 April 1977 and referred it back to the Senate which adopted the House-amended version on 19 April 1977. Thus, it can be said that § 3–108(a)(3) of the LEOBR was added in the relative haste of the final days of the 1977 session of the General Assembly.

12. Md.Code (2003), § 3–109 of the Public Safety Article provides that "[a]n appeal from a decision made under § 3–108 of this subtitle shall be taken to the circuit court for the county in accordance with Maryland Rule 7–202."

Maryland Rule 7–202 in turn provides, in pertinent part, that "[a] person seeking judicial review under this chapter shall file a petition for judicial review in a circuit court authorized to provide the review." The remainder of the Rule mandates the contents and procedures for filing the petition for judicial review.

13. Section 3–108 provides
Section 3–108. *Disposition of administrative action.*
(a) *In general.*—(1) A decision, order, or action taken as a result of a hearing under § 3–107 of this subtitle shall be in writing and accompanied by findings of fact.

(2) The findings of fact shall consist of a concise statement on each issue in the case.

(3) A finding of not guilty terminates the action.

(4) If the hearing board makes a finding of guilt, the hearing board shall:

(i) reconvene the hearing;

(ii) receive evidence; and

(iii) consider the law enforcement officer's past job performance and other relevant information as factors before making recommendations to the chief.

(5) A copy of the decision or order, findings of fact, conclusion, and written recommendations for action shall be delivered or mailed promptly to:

(i) the law enforcement officer or the law enforcement officer's counsel or representative of record; and

(ii) the chief.

\* \* \* \* \* \*

(c) *Final decision of hearing board.*—(1)  Notwithstanding any other provision of this subtitle, the decision of the hearing board as to findings of fact and any penalty is final if:

(i) a chief is an eyewitness to the incident under investigation; or

(ii) a law enforcement agency or the agency's superior governmental authority has agreed with an exclusive collective bargaining representative recognized or certified under applicable law that the decision is final.

(2) The decision of the hearing board then may be appealed in accordance with § 3–109 of this subtitle.

(3) Paragraph (1)(ii) of this subsection is not subject to binding arbitration.

(d) *Review by chief and final order.*—(1)  Within 30 days after receipt of the recommendations of the hearing board, the chief shall:

(i) review the findings, conclusions, and recommendation of the hear board; and

(ii) issue the final order.

(2) The final order and decision of the chief is binding and then may be appealed in accordance with § 3–109 of this subtitle.

(3) The recommendation of a penalty by the hearing board is not binding on the chief.

(4) The chief shall consider the law enforcement officer's past job performance as a factor before imposing a penalty.

(5) The chief may increase the recommended penalty of the hearing board only if the chief personally:

(i) reviews the entire record of the proceedings of the hearing board;

(ii) meets with law enforcement officer and allows the law enforcement officer to be heard on the record;

(iii) discloses and provides in writing to the law enforcement officer, at least 10 days before the meeting, any oral or written communication not included in the record of the hearing board on which the decision to consider increasing the penalty is wholly or partly based; and

gering when an aggrieved party may seek judicial review under § 3–109.

The Majority Opinion essentially concludes that because the General Assembly repeatedly used the word "final" when discussing "guilty" findings by the Board, and did not use the word "final" when discussing a finding of "not guilty," the General Assembly did not intend for a finding of "not guilty" by the Board to be a final decision subject to judicial review in the circuit courts. Maj. op. at 190, 909 A.2d at 704. I would hold that the Legislature's silence regarding the finality of a "not guilty" finding makes § 3–108(a)(3) ambiguous, at most, rather than creating an express conflict between the judicial review provisions of the APA and the LEOBR.

As observed by the Majority, we previously have held that an agency order is "final" and ripe for judicial review if it meets the following standard:

> ordinarily[,] the action of an administrative agency, like the order of a court, is final it if determines or concludes the rights of the parties, or if it denies the parties means of further prosecuting or defending their rights and interests in the subject matter in proceedings before the agency, thus leaving nothing further for the agency to do.

*Comm'n on Human Relations v. Balt. Gas & Elec. Co.*, 296 Md. 46, 56, 459 A.2d 205, 211 (1983). In the present case, a "not guilty" finding by the Board is final, for contested cases purposes in the administrative adjudication process, because "[a] finding of not guilty terminates the action" under § 3–108(a)(3). In other words, it terminates the need for further administrative review, unlike an interlocutory finding of guilt by the Board, which requires subsequent review and action by the agency head, the Chief, under the remaining provisions of § 3–108.

A reading of the plain language of § 3–108 supports this interpretation. Section 3–108 is entitled "Disposition of *ad-*

---

(iv) states on the record the substantial evidence relied on to support the increase of the recommended penalty.

*ministrative action,"* and subsection (a)(3) expressly provides that a "not guilty" finding terminates the "action." The plain language of the statute makes it clear that when the Legislature referred to "action" in subsection (a)(3), it intended to refer to the administrative action itself, rather than the entire proceeding extending through judicial review or appeal. At that point, the action before the agency administrative tribunal is concluded, and there is nothing left to do. The Board's action is final in such an instance.

Our case law bolsters the interpretation that a finding of "not guilty" is but a final administrative order of the Board in a contested case. The Majority relies on *Miner v. Novotny,* 304 Md. 164, 173–74, 498 A.2d 269, 273 (1985), where we said that

> [i]f the board finds the officer innocent of the charge, that ends the proceeding. If it finds him guilty, it then makes a recommendation to the chief of police as to an appropriate punishment. The chief is bound by a determination of innocent, but not a proposed punishment in the event of a finding of guilt. As to that, his decision *(rather than that of the Board )* is final."

(emphasis added). The Majority turns to *Miner* in order to bolster its claim that if the Legislature intended for "not guilty" findings to be reviewable judicially, it would have expressly said so. I attach a different meaning to the language used in *Miner.* In that passage, we essentially reasoned that, although the Chief has the final say in the proposed punishment of an officer found guilty, the Board's decision, insofar as the administrative proceedings are concerned, is final with respect to a finding of "not guilty," because the Chief is foreclosed from taking further administrative action by the determination of innocence. If the agency head is bound by such a determination of not proven guilty, then implicit in this finding is that the administrative action is concluded, and there is nothing left to be decided by the Board or the Chief. In other words, the decision meets the definition of "final" under *Comm'n on Human Relations.*

The Majority opinion essentially interprets § 3–108(a)(3) to mean that the Legislature intended to prohibit judicial review of a "not guilty" finding by imposing additional requirements in order for the order to become "final."  Maj. op. at 188–89, 909 A.2d at 703.  This view would have weight only if § 3–109(a) stated that "[a]n appeal from a decision made under § 3–108 [ (a)(3) ]," rather than the blanket reference to § 3–108 that actually appears in the statute.  As it is, however, § 3–109(a), as written, is entirely consistent with § 10–222(a) of the APA.  Such a construction harmonizes the relevant provisions of the two related statutory schemes, as the more relevant principles of statutory construction, ignored by the Majority, urge us to do.  On this subject, the clearly expressed legislative intent of § 10–222(a) of the APA is not trumped by, nor should it be construed to be inconsistent with, the plain meaning of § 3–108(a)(3) of the LEOBR.  To find an inconsistency is contrary to the canons of statutory construction that mandate a clear and manifest legislative intent in order for one statute to alter or limit another.  *Drew*, 379 Md. at 330, 842 A.2d at 8.

When construing multiple statutes, this Court presumes that the Legislature acts with full knowledge of prior legislative enactments. *Mayor & Town Council of Oakland*, 392 Md. at 316–17, 896 A.2d at 1045.  Considering that § 10–222(a) (enacted in 1993) specifically stated that the agency itself could seek judicial review of a final administrative action in a contested case in which it was a party, one would think that, if the Legislature intended purposefully to exclude the right to judicial review of "not guilty" findings as the Majority suggests, Maj. op. at 188, 909 A.2d at 703, it would have expressly done so in the language of that statute.  At the very least, such an intent would have appeared in the legislative history of the enactment of § 10–222(a).  The complete absence from the bill file of evidence of such a legislative intent necessitates the conclusion that it was not expressly excluded, and at the very least, not contemplated by the Legislature.

It is important to keep in mind that when interpreting statutes, this Court must construe statutes in a common sense manner, and must "avoid constructions that are illogical, un-

reasonable, or inconsistent with common sense." *Frost*, 336 Md. at 137, 647 A.2d at 112. In *Calvert County Planning Commission v. Howlin Realty Management., Inc.*, 364 Md. 301, 319 n. 1, 320, 772 A.2d 1209, 1219–20 (2001), this Court held that administrative agencies are more than just "neutral arbiters of disputes in which they have no independent interest." When the administrative action has the potential to affect the agency in terms of its broader responsibilities, the agency must be free to initiate or intervene in judicial review actions in order to challenge those judgments which may hamper its ability to implement its policies. *See also Md. Racing Comm'n v. Castrenze*, 335 Md. 284, 295 n. 4, 643 A.2d 412, 417 (1994). Although *Howlin* involved an agency's right to participate in judicial review of its final decision, the reasoning is very instructive. To preclude judicial review of the Board's "not guilty" decision here directly affects the Commission's ability to implement and enforce its internal policy. Common sense dictates that the agency be allowed to enforce these policies, even if such enforcement requires judicial review of an internal tribunal's final decision.

The Majority posits that "the administrative agency may seek judicial review only in circumstances where it is expressly authorized by statute to do so." Maj. op. at 185, 909 A.2d at 702. I would hold that, because § 10–222(a) of the APA expressly authorizes judicial review by the agency of the agency's decision, and the LEOBR contains no provisions precluding judicial review of a "not guilty" finding by the Board, the Commission in this situation is authorized expressly to seek judicial review in the Circuit Court.